UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FRANK JOSEPH CASCIO,

    Plaintiff,

v.                                                      Case No.:  8:23-cv-1833-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

### OPINION AND ORDER

Plaintiff Frank Joseph Cascio seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. Plaintiff also filed a reply brief. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I.    **Social Security Act Eligibility, Standard of Review, Procedural History, and the Commissioner's Decision**

A.    **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the administrative law judge, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are

reviewed under a de novo standard. *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at \*2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The Commissioner must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the Commissioner must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the Commissioner must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the Commissioner finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the Commissioner must determine whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform his past relevant work, the Commissioner must determine at step five whether the claimant's RFC permits him to perform other work that exists in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove he is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on June 6, 2018, alleging disability beginning March 25, 2018. (Tr. 66, 180-81). The application was denied initially and on reconsideration. (Tr. 80, 88). Plaintiff

requested a hearing and on August 14, 2019, a hearing was held before Administrative Law Judge Elving L. Torres. (Tr. 34-65). On November 13, 2019, ALJ Torres entered a decision finding Plaintiff had not been disabled from March 25, 2018, through the date of the decision. (Tr. 10-20). On January 8, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-5).

Plaintiff appealed the decision to the United States District Court, and on September 23, 2021, the Court reversed the decision and remanded the action to the Commissioner for further proceedings. (Tr. 1206-20). The Court found that the ALJ had failed to explicitly consider Plaintiff's mental impairments, whether severe or not, when assessing the RFC. (Tr. 1219). On October 6, 2022, the Appeals Council remanded the action to an ALJ for further administrative proceedings. (Tr. 1221-23).

On remand, Administrative Law Judge Anne V. Sprague ("ALJ") held a hearing on May 3, 2023. (Tr. 1156-80). On June 9, 2023, the ALJ entered a decision finding Plaintiff had not been disabled from March 25, 2018, through the date of the decision. (Tr. 1113-25). Plaintiff began this action by Complaint (Doc. 1) filed August 15, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 11).

### D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023. (Tr. 1115). At step one of the

sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 25, 2018, the alleged onset date. (Tr. 1116). At step two, the ALJ found that Plaintiff had the following severe impairments: "cervical spine degenerative disc disease, lumbar spine degenerative disc disease, bilateral hip osteoarthritis, right shoulder degenerative changes, ascending aortic aneurysm, headaches, diabetes mellitus, hypertension, and obesity." (Tr. 1116). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Tr. 1119).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry no more than 20 pounds occasionally and 10 pounds frequently, stand and/or walk for at least 2 hours during the workday, and sit for at least 6 hours during the workday. The claimant can occasionally reach overhead with the right upper extremity. The claimant can never climb ladders, scaffolds, or ropes or be around unprotected heights or dangerous equipment. He can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl. The claimant should avoid extreme vibration, extreme loud noise, and extreme bright lights such as strobe lights and spotlights.

(Tr. 1119).

At step four, the ALJ determined that Plaintiff was capable of performing his past relevant work as an attorney and customer service representative. (Tr. 1124). The ALJ also found that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 1124). The ALJ concluded that Plaintiff had not been under a disability from March 25, 2018, through the date of the decision. (Tr. 1125).

## II.    Analysis

On appeal, Plaintiff raises two issues:

(1)    Whether the ALJ erred in her assessment of Dr. Foster's opinion; and

(2)    Whether the ALJ erred in failing to include additional limitations in the RFC assessment for Plaintiff's mental limitations or consider how his mental limitations affected his ability to perform his past skilled work.

(Doc. 13, p. 4, 18).

### A.    Timothy Foster, Ph.D.'s Opinion

Plaintiff contends that Dr. Foster's opinion finds Plaintiff more limited than reflected in the RFC assessment, and if Dr. Foster's opinion had been properly credited, Plaintiff would have been found disabled. (Doc. 13, p. 9). Plaintiff argues that Dr. Foster's opinion on Plaintiff's mental limitations is supported by his own observations and consistent with other evidence of record. (Doc. 13, p. 10).

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or gives any specific evidentiary weight

to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions given these five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 416.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will

be." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. §§ 404.1513(a)(2)-(3), 416.913(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

Dr. Foster conducted a consultative Disability Evaluation of Plaintiff on August 6, 2018. (Tr. 668-71). Dr. Foster was provided no background information, treatment notes, or functional information. (Tr. 668). On observation, he found Plaintiff fully cooperative, comfortable, and pleasant. (Tr. 668-69). In the Residual

Functioning section of his evaluation, Dr. Foster found Plaintiff: able to understand

and carry out simple instructions; unable to remember to do simple things; able to

relate inconsistently with peers, supervisors, and coworkers; and likely unable to

complete a normal workweek without interruptions from psychologically based

symptoms. (Tr. 670).

In the decision, the ALJ discussed Dr. Foster's consultative examination

findings:

> Timothy Foster, Ph.D., the consultative examiner, opined that
> the claimant can understand and carry out some simple
> instructions; he often does not remember to do simple things;
> he relates inconsistently to peers, supervisors, and coworkers;
> and he likely cannot complete a normal workweek without
> interruptions from psychologically based symptoms (Exhibit
> 8F). I found this opinion unpersuasive since it is not consistent
> with Dr. Foster's own observations and the claimant's reported
> activities. In addition, Dr. Foster relied heavily on the
> claimant's subjective reports, which are not supported by the
> objective findings. Dr. Foster observed that the claimant had
> no problems sustaining attention, he appeared of average
> intelligence, and his judgment and insight were within normal
> limits (Exhibit 8F). The claimant also reported that he is able
> to care for grooming with reminders, can prepare simple meals,
> can go to the grocery store and interact with strangers in the
> check-out line, and can do household chores (Exhibit 8F). . . .
> Finally, this opinion is not supported by the claimant's
> treatment notes that document a normal mental status
> examination, including logical thought process, normal
> concentration, and good recall (Exhibit 10F).

(Tr. 1118-19).

Plaintiff argues that the ALJ erred in determining that Dr. Foster's opinion did

not support his limitation findings, and erred in determining Dr. Foster's opinion

was mainly based on Plaintiff's subjective statements rather than Dr. Foster's examination and observations. (Doc. 13, p. 10). Plaintiff cited the following language in a parenthetical in the Residual Functioning section as evidence of supportability: "[t]hese comments are my opinions based on the interview, my observations and the history presented to me." (Tr. 670).

Despite this statement, Dr. Foster's evaluation of Plaintiff contained generally normal findings, such as Plaintiff being able to identify the year, season, month, day of the week, state, county, and city. (Tr. 669). Dr. Foster found Plaintiff showed no problems sustaining attention, appearing to be of average intelligence, accurately subtracting 7 from 100, and spelling the word, "world," forwards and backwards as a measure of concentration. (Tr. 670). Dr. Foster also found Plaintiff's judgment and insight appeared to be within normal limits. (Tr. 670).

As to functional limits, Dr. Foster found Plaintiff able to care for his grooming and hygiene, but admitted needing some reminders. (Tr. 670). He could prepare his own meals, grocery shop, stand in line around strangers and interact appropriately, watch a television program and concentrate and "sometimes understand what he is watching," and complete his own household chores. (Tr. 670). Arguably, these findings are based on Plaintiff's subjective statements because Dr. Foster did not observe Plaintiff while doing these activities.

As the ALJ determined, Dr. Foster's Mental Status Exam does not support his Residual Functioning assessment. The Mental Status Exam results were essentially normal – Plaintiff had no problems sustaining attention, had no recall problems, had no concentration problems, followed simple instructions, and had judgment and insight within normal limits. (Tr. 670). Yet Dr. Foster found that Plaintiff could understand and carry out only simple instructions, could not remember to do simple things, and related inconsistently to peers, supervisors, and coworkers. (Tr. 670). Dr. Foster did not explain how his opinion was supported by his examination, and the evaluation itself does not support these limitations. Nor does Dr. Forster support his finding that Plaintiff could not complete a normal workweek without interruptions from psychologically based symptoms. (Tr. 670). Thus, substantial evidence supports the ALJ's supportability findings.

As to consistency, Plaintiff argues that the ALJ erred in finding Dr. Foster's opinion inconsistent with other medical providers' treatment notes. (Doc. 13, p. 12-16). Plaintiff cites various treatment notes, such as July 2018 treatment notes in which Plaintiff reported long-term depression, anxiety, and loss of interest in normal routine and was diagnosed with major depressive disorder and generalized anxiety. (Doc. 13, p. 13-15). And in October 2018, he returned for treatment and reported improvement with the antidepressant medications, but needed a different medication based on side effects. (Doc. 13, p. 15). He stopped his medications, which caused

irritability and other symptoms, but agreed to restart medication. (Doc. 13, p. 15). In February 2019, he returned requesting an increase in medication dose, and later had some improvement with this new dosage. (Doc. 13, p. 16). Importantly, after May 2019, Plaintiff did not seek treatment until February 2023. (Doc. 13, p. 16).

The ALJ summarized Plaintiff's mental health treatment records by various providers in the decision. (Tr. 1117-19). The ALJ also discussed how Plaintiff sought treatment for depression and anxiety, and his symptoms improved with medication. (Tr. 1117-18). At a July 2018 visit, the ALJ noted that even without medication, Plaintiff presented as pleasant and cooperative, and had a logical thought process, with a euthymic mood, good recall, and denied hallucinations. (Tr. 1117). In February 2019, his mental status examination remained normal, and his medication dosage was increased as he requested. (Tr. 1118). In May 2019, Plaintiff's mental status exam remained normal. (Tr. 1118). The ALJ noted that there was no significant mental health treatment notes from May 2019 through February 2023. (Tr. 1118). In February 2023, Plaintiff's medications were changed, and in March 2023, Plaintiff presented with no complaints or evidence of anxiety, manic, or psychotic symptoms. (Tr. 1118). He was pleasant and cooperative, and had good eye contract, a logical and organized thought process, appropriate and stable affect, concentration within normal limits, grossly intact memory, good recall, and good judgment. (Tr. 1118). Lastly, as the ALJ noted and as Plaintiff's testimony reflected,

- 13 -

his mild limitations did not impact his ability to engage in activities of daily living such as going out to eat, cruising, and vacationing. (Tr. 1122, 1161-63).

All in all, the ALJ considered and summarized Plaintiff's treatment records, and explained why these records were inconsistent with Dr. Foster's residual functional limitations, including being able to carry out only simple instruction, being unable to remember to do simple things, relating inconsistently to peers, supervisors, and coworkers, and being unable to complete a normal workweek without interruptions from psychologically based symptoms. (Tr. 670). Substantial evidence supports the ALJ's finding that Dr. Foster's opinion is unsupported by his own evaluation and inconsistent with other evidence of record.

### B.    Mild Mental Limitations and the RFC

Plaintiff contends that the ALJ found depression and anxiety medically determinable impairments, and also found Plaintiff had mild or no limitations in the "paragraph B" criteria. (Doc. 13, 18-19). Plaintiff argues that the ALJ failed to discuss whether his mild limitations in certain areas would impact his RFC and ultimately impact the vocational expert's testimony that Plaintiff could return to his past skilled work. (Doc. 13, p. 18-20). Plaintiff claims that the ALJ did not provide sufficient reasons for a reviewing court to determine whether the proper legal analysis was conducted, relying on *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1251 (11th Cir. 2019). (Doc. 19, p. 6). *Schink* is distinguishable from this case.

Plaintiff asserts that the Eleventh Circuit remanded *Schink* in part because whether severe or not, the administrative law judge needed to consider a plaintiff's mental impairments in the RFC assessment, but failed to do so. (Doc. 19, p. 4). In *Schink*, Plaintiff appealed the denial of his application for disability benefits. *Id.* The District Court affirmed the decision. *Id.* While using superseded regulations, the Eleventh Circuit held that the administrative law judge improperly rejected the opinions of two treating physicians without good cause. *Id.* at 1264. The Court also found substantial evidence did not support the administrative law judge's finding that the plaintiff's mental impairments were non-severe. *Id.* at 1268. Finally, the Court found that the administrative law judge erred in the RFC assessment by erroneously omitting Plaintiff's mental impairments. *Id.* at 1269. In the RFC discussion, the administrative law judge discussed Schink's physical impairments and only mentioned he had bipolar disorder with no real discussion of how this mental condition affected the plaintiff's RFC. *Id.*

Here, the ALJ found Plaintiff's medically determinable mental impairments caused no more than mild limitations in three of the functional areas and caused no limitations in the fourth. (Tr. 1117). The ALJ also found that Plaintiff's "mental impairments considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." (Tr. 1117). Plaintiff does not contest this finding.

At step three, the ALJ discussed Plaintiff's allegations of mental impairments at length. (Tr. 1117-1118). Later in the decision when assessing the RFC, the ALJ found:

> the record does not reflect the need for any mental limitations in the claimant's residual functional capacity. The claimant consistently presents with good concentration, normal memory, appropriate mood, good eye contact, and logical and coherent thought processes (Exhibit 7F, Exhibit 8F, Exhibit 10F, Exhibit 15F, and Exhibit 20F). The claimant's mild limitations did not impact his ability to engage in instrumental activities of daily living and the claimant reports significant social activities (going out to eat, cruising, vacationing).

(Tr. 1122). Thus, unlike in *Schink*, the ALJ discussed Plaintiff's non-severe mental impairments when assessing the RFC and found they would not impact Plaintiff's functional work ability. (Tr. 1112). As a result, the ALJ did not err in failing to include additional limitations in the RFC assessment for mental impairments. *See Garcia v. Comm'r, Soc. Sec. Admin.*, No. 23-11184, 2023 WL 7404856, at *6 (11th Cir. Nov. 9, 2023) ("Thus, the evidence in the record supports the ALJ's finding that Garcia's mental impairments were non-severe and did not cause more than minimal limitation in Garcia's ability to perform basic mental work. The ALJ therefore did not err in failing to include a mental limitation when forming his RFC."); and *see Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022) ("Notably, an ALJ is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations in the PRT criteria.") (citing *Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979-

80 (11th Cir. 2016) (per curiam)). In the end, the ALJ considered Plaintiff's mild mental impairments and found they do not cause any additional limitations in the RFC assessment. Substantial evidence supports the ALJ's RFC assessment and the hypotheticals posed to the vocational expert.

## III.  Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on July 12, 2024.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties